# FEBRUARY, 1910.

### IDELL RILEY v. THE STATE.

#### No. 351.  Decided February 2, 1910.

**1.—Bawdy House—Definition of Offense—Disorderly House—Assignation House.**

See opinion for the difference between a bawdy house, disorderly house and assignation house, as defined by statute.

**2.—Same—Evidence Required to Convict.**

Upon trial of unlawfully keeping a bawdy house, the State must meet the case as charged in order to support a conviction.

**3.—Same—Continuance—Material Testimony.**

Where upon trial of keeping a bawdy house, the State introduced testimony to the effect that a man and a woman were seen together in one of the rooms of the alleged house, for illicit purposes, and defendant's application for a continuance, stated that these witnesses would contradict the State's testimony, and showed due diligence in trying to secure the attendance of said witnesses, it was reversible error to overrule said motion and not to grant a new trial; although appellant had testified that if said parties were in her house they were there without her consent and that she had no knowledge of this fact.

**4.—Same—Proof Necessary—Resort for Prostitutes.**

Upon trial of keeping a bawdy house, the State could not rely upon the fact that appellant herself may have had illicit sexual intercourse in said house, to prove or sustain the allegation that it was a bawdy house where women resorted or resided for the purpose of carrying on their vocation.

Appeal from the County Court of Palo Pinto.  Tried below before the Hon. J. C. Houts.

Appeal from a conviction of keeping a bawdy house; penalty, a fine of $200 and twenty days jail confinement in the county jail.

The opinion states the case.

*Albert Stevenson,* for appellant.—On question of continuance: Bates v. State, 45 Texas Crim. Rep., 420, 76 S. W. Rep., 462; McIlwaine Annotated Digest, p. 597.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The charging part of the indictment is as follows: "That Idell Riley . . . did then and there

unlawfully keep and was concerned in keeping a bawdy house then and there situate, and did then and there permit prostitutes to resort and reside in said house for the purpose of plying their vocation, which said bawdy house was then and there leased and occupied by the said Idell Riley." The statute under which appellant was indicted reads as follows: "A bawdy house is one kept for prostitution, or where prostitutes are permitted to resort or reside for the purpose of plying their vocation. A disorderly house is any assignation house or any theater, playhouse or house where spirituous, vinous or malt liquors are kept for sale, and prostitutes, lewd women, or women of bad reputation for chastity are employed, kept in service, or permitted to display or conduct themselves in a lewd, lascivious or indecent manner," etc. "An assignation house is a house, room, or place where men and women meet by mutual appointment, or by appointment made by another, for the purpose of sexual intercourse, whether at such place vinous, spirituous or malt liquors are kept for sale or are used or not."

It will be observed that appellant was indicted under the first clause of the statute above quoted, that is, with keeping a bawdy house. This statute has two general definitions, one of a bawdy house, the other disorderly house. The disorderly house has a subordinate definition in regard to what it takes to constitute an assignation house. The pleader having selected to charge appellant with keeping a bawdy house, the State must meet the case as charged. The evidence introduced by the State is to the effect that a man by the name of Henderson and a girl they called Annie occupied the house that was charged to have been kept by appellant, and when they were in charge of the house it sustained a bad reputation. In other words, it had the reputation of being a house of ill-fame or ill-repute, a bawdy house. After they left the house appellant rented it. The State introduced evidence that under the management of appellant the house sustained a bad reputation in the respect indicated, and that her reputation was bad. This testimony was introduced through the mouths of four or five witnesses. The State also proved that a man by the name of Harrington and a woman by the name of Briles were seen in one of the rooms of the house or flat in such relation to each other as would indicate they were there for the purpose of having sexual intercourse. The witness Kyle and another witness gave evidence to this effect. They also proved at the time appellant was not at home, but was at a cafe away from her residence taking a meal; that they went to where she was and informed her of that fact, arrested appellant and Harrington. They took Harrington to the city hall, and filed charges against him, but these charges were dismissed. The witness Kyle testified also that he and a man named Patton heard some row between a man and a woman in one of the rooms of appellant's house; who they were they did not know. Another witness named Gonce testified that he made arrangement with a woman and they occupied

a room in appellant's house. He says this occurred twice. Another witness declined to say whether he ever slept with appellant or not; that he had been at the house. Another witness swore that he saw Hindman go in a room with appellant and undress; that he was looking over the transom at them; that they blew out the light and he went away. This is about the substance of the State's case. Appellant denied having intercourse with Dalton, or anybody at her house, or that she kept a disorderly house, and stated that if there was any prostitution or acts of intercourse between men and women that it was without her knowledge or consent; that she was not at home when the witness Kyle says he saw Harrington and the Briles woman in a compromising attitude as he testified. In this she is borne out by the statements of the witnesses, who say they saw Harrington and the Briles woman together. She also testified that if Harrington and the Briles woman occupied a room at her house, it was without her knowledge or consent. She corroborates the State's witness that she was not at home at the time, but was at a cafe taking a meal. The evidence seems to be uncontroverted that she was keeping a rooming-house where people took lodging and board. People who visited the town from the country occupied rooms at appellant's house, and they swear they saw nothing wrong about the house while they were there; so far as they could see everything was all right and orderly. Several witnesses introduced by appellant testified that the reputation of the house was good; among others, were Brewster, Hazlewood, Vaughn, Beeman and Hays.

In this condition of the record appellant averred in her motion for a new trial the court erred in not granting her a continuance for the testimony of Harrington. She also includes the woman Briles in the application for continuance. When the application was overruled appellant reserved an exception. Process was issued on the 8th of April, but was returned not found. It is alleged that the absent witness Harrington lives in Palo Pinto County, and he was temporarily absent and will return to the county before the next term of court. She says in this connection that she is informed that Will Kyle and Jim Barrett will swear that they saw Harrington and a certain woman named Briles, whose other name is unknown to her, in a room in the house in question in the act of copulating, by looking over the transom into the room; that the State will rely on these circumstances, together with others similar, as evidence to warrant a conviction. She says that Harrington entered said room and took possession, together with said Briles woman, if they were in said room at all, during the absence of appellant while at her dinner at an uptown restaurant and without her consent, and that she can so prove by the said Harrington, if permitted to do so. She says she can prove the same thing by the Briles woman, whom she has not subpoenaed for the reason she did not know where she was and could not locate her, although she made diligent effort to do so until the morning of the trial, when she heard for the

first time that the woman was in the Cedar Brakes, in Palo Pinto County, since which time she has not had an opportunity to subpoena her. And she avers in this connection that she did not know that said Harrington and said Briles woman were in her house at the time, and not until afterwards, and if they were in there it was without her consent. The bill is approved without qualification. We are of opinion that appellant was entitled to this testimony under the circumstances. She was indicted, as before stated, for keeping a bawdy house, where prostitutes resorted and resided for the purpose of plying their vocation. The incident testified by the witnesses for the State in regard to Harrington and the Briles woman is one of the leading features of the State's case, and as we recall the record it is the only time a woman was known to go to appellant's house for that purpose, except where another witness testified that he had two appointments at appellant's house and met a woman there in a room. This was very important testimony, it occurs to us, and if, as could have been shown by Harrington, he and Mrs. Briles were there without appellant's knowledge or consent, the criminative force of this transaction would have been met and broken. There is no evidence of the fact that these two women were prostitutes outside of the general fact that they met men and copulated with them, unless there is some little evidence going to show that perhaps the Briles woman's reputation was bad. Appellant herself testified that the Briles woman, if there, was there without her knowledge or consent; she knew nothing of it, and she is sustained by the State's witnesses to the effect that she was absent from home when they saw the Briles woman and Harrington in the house. Appellant testified herself to the fact that she was unaware of their presence, and that they were there without her knowledge or consent, but as she is the appellant in the case, and it being the first application, the rule in regard to cumulative evidence does not obtain, the evidence of the other witnesses was important to appellant by reason of the fact to meet any inclination on the part of the jury to disregard her testimony on account of the interest in the prosecution. We are of opinion that the application for continuance should have been granted. The State could not rely upon the fact that appellant herself may have had intercourse with Dalton to prove or sustain the allegation that it was a bawdy house where women resorted or resided for the purpose of carrying on their vocation. The statute contemplated there must be other women resorting to the place or residing there to engage in prostitution; that is necessarily so from the terms of the statute. We are, therefore, of opinion that the court was in error in refusing appellant's application for continuance.

The judgment is therefore reversed and the cause is remanded.

*Reversed and remanded.*